**Guadulupe QUINTANA, Plaintiff,**

v.

**Caspar W. WEINBERGER \*, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. C–2427.**

United States District Court,
D. Colorado.

Dec. 5, 1974.

Paul R. Kiser, Denver, Colo., for plaintiff.

James L. Treece, U. S. Atty., Denver, Colo., for defendant.

OPINION AND ORDER

CHILSON, District Judge.

Plaintiff originally filed this action on July 13, 1970, seeking review of defendant's decision that plaintiff is not "disabled" or entitled to benefits within the meaning of the Social Security Act. Plaintiff's claimed disability stems from a severe dermatitis condition. Although the precise irritant or irritants which cause the dermatitis have not been isolated, plaintiff's condition is most likely caused by chromates or industrial dust present at his former employer's steel mill.

By an order entered on April 13, 1971, upon opposing motions for summary judgment, this Court determined that defendant's decision denying plaintiff's claim for benefits was not supported by substantial evidence. Specifically, this Court held that:

> "[T]he [Secretary's] decision is not based upon substantial evidence because the evidence does not show that alternative jobs available to plaintiff will not cause his severe skin problem to reappear.

---

\* Defendant was formerly designated as Elliot L. Richardson. This action may proceed notwithstanding a change in the person occupying the office of Secretary of HEW. 42 U.S.C. § 405(g).

"IT IS THEREFORE ORDERED that the decision of the Secretary is reversed and the matter is remanded to the Secretary with directions to the Secretary to grant disability benefits or for a rehearing as the Secretary may determine."

Pursuant to this Court's order, further administrative hearings were held on December 1, 1971, and July 24, 1972. On the basis of these hearings, the Administrative Law Judge again recommended that plaintiff's claim for disability benefits be denied. (Tr.[1] 120.) The Appeals Council accepted and adopted the Administrative Law Judge's findings and recommendations and determined "that the claimant is not entitled to a period of disability or to disability insurance benefits under the provisions of the Social Security Act, as amended," on December 14, 1972. (Tr. 108). This decision denying benefits thus became the decision of the Secretary of Health, Education and Welfare.

Based upon this decision, defendant filed a "Renewed Motion for Summary Judgment" and supporting brief on March 22, 1974. Plaintiff has filed a memorandum of law in opposition, to which defendant has replied.

The question to be determined upon this motion, as was the case on the previous motions for summary judgment, is whether the defendant's denial of benefits to plaintiff is supported by substantial evidence upon the entire record of the administrative proceedings.

As discussed in this Court's order of April 13, 1971, our review is limited to a determination of whether defendant's decision is supported by "substantial evidence" upon the whole administrative record. 42 U.S.C. § 405(g). The Tenth Circuit Court of Appeals, adopting the general rule, explained this standard of review in Gardner v. Bishop, 362 F.2d 917, 919 (10th Cir. 1966) as follows:

"Substantial evidence [is] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' . . . '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' " (footnotes omitted)

This Court must therefore determine whether the administrative record as a whole furnishes substantial evidence to support defendant's decision that plaintiff is not under a disability as defined in the Social Security Act and is therefore not entitled to benefits. As defined in 42 U.S.C. § 423(d)(1)(A), "disability" means

"[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a period of not less than 12 months."

42 U.S.C. § 423(d)(2) provides:

For purposes of paragraph (1)(A)—
"(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . ., 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

Thus the evidence produced at the administrative hearings related to the existence of alternative employment for which plaintiff is qualified and in which he can safely engage.

---

1. Transcript of Supplemental Proceedings.

At the hearing before the Administrative Law Judge held on December 1, 1971, Mr. Robert James, an expert vocational witness, testified as to possible alternative vocations available to plaintiff based on his age, education, work experience, and degree of physical impairment. (Tr. 219). Mr. James had testified at the original hearings that plaintiff was physically and mentally capable of performing a variety of jobs as a laborer or semi-skilled laborer. He was unable at that time, however, to testify as to whether these proposed occupations would or would not exacerbate plaintiff's skin condition.

Mr. James was asked at the December 1, 1971, hearing whether his views regarding plaintiff's vocational capabilities had changed. He responded as follows:

"I would have to say that the issue of chromates in any of those environments would possibly qualify his [plaintiff's] vocational feasibility, and I would leave the issue of the presence of chromates in the environment to Mr. Torrey [an industrial hygenist]."

(Tr. 221). Mr. James went on to say, however, that based on his independent research, his proposed alternative occupations would "not be inconsistent with the medical evidence indicating any limitation upon his physical abilities as I reviewed it and heard here today." (Tr. 222). The alternative occupations proposed by Mr. James are consistent with those suggested by Dr. Philpott as being appropriate to plaintiff's condition. (Tr. 183). These jobs included positions as bottle inspector, warehouse record clerk, glass products inspector, forklift operator, and route delivery man.

Mr. Jack D. Torrey, an expert industrial hygenist, testified that most of the jobs proposed by Mr. James would involve relative chromate-free environments. (Tr. 231–34).

The balance of the evidence introduced on the issue of plaintiff's employability consists of testimony given by Dr. James A. Philpott and Dr. Frederick G. Tice, Jr., both dermatology experts, and both of whom were familiar with plaintiff's history and treatment for dermatitis.

Dr. Philpott explained his perception of plaintiff's condition as follows:

"Based upon my examination and history as it relates to Mr. Quintana's condition, it was my opinion that he did have an occupational dermatitis presumably caused by chromates. My examination of September the 20th indicated and revealed, however, that Mr. Quintana at the present time is relatively free from any residual dermatitis. His history, based upon his history to me and also the review of the previous records, would indicate that he did have an eczematous type of dermatitis involving primarily his exposed parts . . . and that this was apparently work-related in that he had substantial improvement when he was off of work for a significant period of time."

(Tr. 175). Dr. Philpott then concluded:

"Well, my opinion, based upon present findings, and past history, and a review of his medical record, would be that Mr. Quintana does have a disabling dermatitis which is limited to time periods that he has been employed by the CF&I Corporation during the times when he was working at the plant. It is my opinion that, at the present time, Mr. Quintana does not have a disabling condition. I feel that he is limited in going back to employment in the plant, but I do not feel that he is disabled from a standpoint of being able to become employed in other types of work.

.     .     .     .     .     .

"At the present time, I would have to say that I couldn't place any limitations on [his employment] except that I don't feel that he could go back to work for Colorado Fuel and Iron Company, at least in the plant."

(Tr. 178–79).

Dr. Tice testified generally about plaintiff's condition and indicated that

plaintiff could not work at the steel mill due to the presence of irritants which cause his dermatitis condition to flare up. (Tr. 262). However, in a letter to the Administrative Law Judge dated October 25, 1971, Dr. Tice commented that:

"It is difficult to understand why Mr. Quintana cannot be gainfully employed at some other occupation in a different environment. I would have to say that Mr. Quintana does not have any permanent damage to the skin assuming that he avoids exposure to chromates. His present skin condition should not preclude his employment."

(Tr. 290).

When asked whether the jobs suggested by the vocational expert would exacerbate plaintiff's condition, Dr. Tice was unable to give any definite opinion. (Tr. 265). He could say only that, "All we can do is same as we did out in the mill, try him and see if he can work." (Tr. 271).

It should be added that Dr. Tice indicated two possible contributing factors to plaintiff's condition in addition to exposure to chromates and dust at the steel mill. Dr. Tice said, somewhat equivocally, that plaintiff's condition might possibly be intensified by exposure to direct sunlight. (Tr. 262, 339; but see Tr. 275). He also testified that the fact that plaintiff is unemployed and the emotional stress caused thereby might contribute to his condition. In this connection, Dr. Tice commented that, "if you could find a job for him, he would be better off. His skin might get better in certain circumstances." (Tr. 277).

Based upon the evidence adduced at the two hearings following this Court's remand, the Administrative Law Judge concluded:

"Notwithstanding the claimant's inability to return to his former work, the evidence establishes that he retained the residual functional capacity to engage in other types of work activity in fields unrelated to his previous work, including positions of bottle inspector, carton inspector, warehouse record clerk, glass products inspector, forklift operator, and route delivery man, as enumerated by the vocational expert at the supplemental hearing, without hazard to his health and all of which exist in significant numbers in the claimant's region and national economy."

Administrative Law Judge's decision at p. 18, paragraph 7. (Tr. 137).

From the testimony adduced before the Administrative Law Judge, including that of Mr. James, the vocational expert, Mr. Torrey, the industrial hygienist, and Drs. Philpott and Tice, the dermatology experts, it appears that the Administrative Law Judge's decision, made in his capacity as trier of fact, is reasonable and supported by substantial evidence. The testimony is certainly adequate to support the conclusion reached, and it is sufficient to survive a motion for directed verdict if this were a matter capable of submission to a jury. Gardner v. Bishop, *supra*. In reaching this conclusion the Court may not offer its own opinion as to plaintiff's employability in the suggested alternative jobs, and the Court offers none. The Court determines only that the decision of the Administrative Law Judge, as adopted by the Appeals Council, is supported by "substantial evidence" as judicially defined, and the decision must therefore be allowed to stand.

It is therefore ordered that the decision of the defendant is hereby affirmed.